## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF NORTH CAROLINA, SOUTHERN DIVISION

JOHNNY SMALL,                                )
                                             )
        Plaintiff,                  )
                                             )
        v.                          )       Case No:
                                             )
CITY OF WILMINGTON, J.J.                      )
LIGHTNER, DONNA BROWN, WAYNE                  )
NORRIS, DARRYL NESTER, JOSEPH                 )
NEUSCHAEFER, BRUCE HICKMAN,                   )
UNKNOWN EMPLOYEES OF THE                      )
WILMINGTON POLICE DEPARTMENT                  )       JURY TRIAL DEMANDED
and UNKNOWN SURETY FOR THE                    )
CITY OF WILMINGTON,                           )
                                             )
        Defendants.                 )
                                             )

## FIRST AMENDED COMPLAINT

PLAINTIFF, JOHNNY SMALL, by and through his undersigned attorneys,

LOEVY & LOEVY and RUDOLF WIDENHOUSE, complain of Defendants CITY

OF WILMINGTON, J.J. LIGHTNER, DONNA BROWN, WAYNE NORRIS,

DARRYL NESTER, JOSEPH NEUSCHAEFER, BRUCE HICKMAN, UNKNOWN

EMPLOYEES OF THE WILMINGTON POLICE DEPARTMENT, and UNKNOWN

SURETY FOR THE CITY OF WILMINGTON and state:

# INTRODUCTION

1. Plaintiff Johnny Small spent nearly three decades incarcerated for a murder that he did not commit. Arrested at only 15 years old, Plaintiff spent the better part of his life growing up inside prison walls.

2. Plaintiff was convicted after the Defendants fabricated evidence to falsely implicate Plaintiff and withheld evidence that would have demonstrated his innocence. In particular, the Defendants coerced the State's main witness against Plaintiff – a teenager named David Bollinger – into falsely inculpating Plaintiff by, among other things, unlawfully threatening to prosecute Bollinger for murder and make sure he got the death penalty if he did not point the finger at Plaintiff. Then, to bolster Bollinger's fabricated testimony, the Defendants coerced a series of kids – 15 to 18 years old – into falsely implicating Plaintiff. Reflecting on the criminal investigation and the Defendants' conduct, a court recently found that "something is not right."

3. Not right indeed. In addition to coercing false testimony (and withholding the fact of coercion), the Defendants also buried evidence that would have undermined the remainder of the State's case against Plaintiff: Evidence that completely contradicted the State's other main witness, Nina Raiford, and that demonstrated that the alleged murder weapon could not have been the murder weapon at all. None of this was disclosed to the prosecutor and therefore, also not to the defense.

4.     With one hand tied behind his back, Mr. Small was wrongfully convicted of murder and sentenced to life in prison.

5.     Steadfast in his innocence and never giving up hope that he would one day be free, eventually the North Carolina Center on Actual Innocence ("NCCAI") took up Plaintiff's cause. Unprompted, Bollinger contacted the NCCAI in 2012 and explained to them that he had been coerced into giving false testimony.

6.     In addition, the NCCAI located a previously undisclosed note in the Wilmington Police Department's file, which eviscerated any suggestion that the murder weapon the Defendants alleged Plaintiff used could have been the murder weapon. The NCCAI also located a host of additional undisclosed evidence in the Wilmington Police Department's ("WPD") homicide file, documents that had never before been turned over to the prosecution or defense.

7.     Following a multi-day evidentiary hearing, a court vacated Mr. Small's conviction. The State then dismissed all charges against him.

8.     Although Mr. Small is now free, he will never regain the decades of his life lost to this wrongful conviction. This lawsuit seeks redress for his injuries.

## Jurisdiction and Venue

9.     This action is brought pursuant to 42 U.S.C. § 1983 and North Carolina law to redress the deprivation under color of law of Plaintiff's rights secured by the U.S. Constitution and state-law torts committed against them.

10.     This Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and of their state-law claims pursuant to 28 U.S.C. § 1367. In

addition, on information and belief, this Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of Florida, Defendants are citizens of North Carolina, and the amount in controversy exceeds $75,000.

11.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## Parties

12.     Plaintiff Johnny Small is a citizen of Florida. He was raised in Wilmington, North Carolina, where he lived with his mother until his unlawful arrest at age 15.

13.     On information and belief, Defendants J.J. Lightner, Donna Brown, Wayne Norris, Darryl Nester,  Joseph Neuschaefer and Bruce Hickman are citizens of North Carolina.  At all times relevant to this Complaint, the Defendant Officers were employed by the Wilmington Police Department and were acting under color of law and within the scope of their employment. Individual Defendants are sued in their individual capacities.

14.     Defendants Unknown Officers of the Wilmington Police Department were at all times relevant to this Complaint acting under color of law and within the scope of their employment. They are sued here in their individual capacities.

15.     Defendant City of Wilmington is a municipal corporation organized under the laws of the State of North Carolina. The Wilmington Police Department is and was at all times pertinent to this action a department of the Defendant City

of Wilmington. The City of Wilmington is or was the employer of each of the Defendant Officers.

16.     Defendant Unknown Surety of the City of Wilmington is the surety from which the City of Wilmington has purchased insurance pursuant to N.C. Gen. Stat. § 160A-45(a) and waived sovereign immunity.

## FACTUAL BACKGROUND

### The Murder of Pamela Dreher

17.     On July 13, 1988, Pamela Dreher was murdered inside her Tropical Paradise Fish Store in the Delgado strip mall in Wilmington, North Carolina.

18.     Her body was found lying face down on the floor. She had been shot in the head. The cash register was open, the money clips were up and there were no bills in the drawer.

19.     The last cash register receipt was printed at 5:29 p.m. A slip showing the day's receipts, totaling approximately $93 was printed at 5:39 p.m. Two "no sale" slips were printed at 5:46 p.m. and 5:49 p.m.; pressing the "no sale" button allows a person to open the cash register drawer without a purchase being made.

20.     Joe Bryant, who operated the store next door, found Ms. Dreher just before 6 p.m. and called 911.

21.     No one in the area, including those in the other businesses, heard gunshots.

### The Early Investigation

22.     The murder was investigated by the WPD. Defendants Lightner and Brown were the lead detectives.

23.     After a month, the Defendants' investigation was hitting a dead end. There was a set of fingerprints on the aquarium near the cash register, but the prints did not match anyone – including Plaintiff. No murder weapon was found and no one in the area heard gunshots, let alone witnessed the crime.

24.     In early August 1988, Crime Stoppers offered a $5,000 reward. Governor Jim Martin approved an additional $5,000 reward.

### The Defendants Fabricate a Case Against Plaintiff

25.     Having no legitimate leads, the Defendants turned their attention to 15 year-old Plaintiff, Johnny Small. At the time of the murder, Small was a teenager who lived with his family less than a mile from the Tropical Fish store.

26.     In September 1988, after hearing about the reward money, Nina Raiford called Crime Stoppers. Raiford apparently told Crime Stoppers that sometime between 5 and 6 p.m. as she was walking home from work, she saw Plaintiff come out of the fish store and get into a brown car driven by "someone else." Although Raiford knew Bollinger, she did not identify Bollinger as the "someone else." According to Raiford, she did not come forward with this information until after she spoke with a school teacher.

27.     The problem with Raiford's account, however, was that it was demonstrably false: Raiford was working at McDonald's until 5:53 p.m., making it

impossible for her to have been at the crime scene either when the murder occurred or shortly thereafter. According to Raiford, the McDonald's that she worked at was at least a 45-minute walk from the Delgado Square strip mall, and she walked home from work that evening.

28.    In addition, when Defendants interviewed Raiford's teacher, the teacher told the Defendants that Raiford had not mentioned Small. Instead, Raiford had given a completely different account of the murder. The Defendants buried this information, including a note documenting their conversation with Raiford's teacher. It was never disclosed to the prosecution or the defense.

29.    Instead, the Defendants ensured Raiford got reward money and proceeded to fabricate a case against Plaintiff to corroborate Raiford's false account.

30.    To do so, the Defendants coerced David Bollinger into creating a fabricated confession implicating Plaintiff in the murder. At the time, Bollinger was a teenager and one of Plaintiff's best friends.

31.    Bollinger knew absolutely nothing about the murder because at the time the murder occurred he was at a car show in South Carolina with his boss.

32.    Nonetheless, the Defendants threatened that they would charge Bollinger with murder and make sure he got the death penalty unless he implicated Plaintiff in the crime. This coercion was never disclosed to the prosecutor.

33.    Also, because he knew nothing about the murder, the Defendants fabricated a story for Bollinger to tell. The Defendants had Bollinger write out that fabricated statement as his confession. The first time he did so, the Defendants

ripped up the confession; they told Bollinger he had to change his confession because there were things in the confession that were not "correct."

34.     Bollinger was subsequently charged with being an accessory after the fact to the Dreher murder.

35.     After he gave his "confession," the Defendants told Bollinger that if he ever changed it, they would make him pay. The Defendants also promised Bollinger that they would make sure that all charges against him in connection with the Dreher murder were dismissed as long as Bollinger continued to play along. None of the fabrication, deals or threats that the Defendants used to secure Bollinger's false statement – nor the fact that the Defendants fabricated it – were ever disclosed to the prosecution or defense.

36.     Bollinger was not the only witness that the Defendants coerced. In fact, the Defendants coerced a string of 15 to 18 year old kids in an effort to bolster Bollinger's (and Raiford's) false accounts of the murder. None of this coercion was ever disclosed.

37.     For example, the Defendants coerced a 16 year-old acquaintance of Plaintiff's, Jennifer Long, into falsely alleging that Plaintiff made inculpatory statements to her. The Defendants scared the 16 year-old into making these false statements by telling Long that if she did not, she would go to prison and never see her parents again. The Defendants also fed Long information about the murder so she could make Plaintiff's alleged statements to her seem credible, coached her on

what to say and ensured that she received some of the reward money. None of this misconduct was disclosed.

38. In addition, the Defendants coerced Plaintiff's teenage friend Ray Brigman into falsely alleging that Plaintiff stole his gun during a trip to Charlotte in May 1988. This was significant evidence used against Plaintiff at trial.

39. The Defendants' theory that they presented to the prosecutor was that Plaintiff stole Brigman's gun during a trip to Charlotte in May 1988 and used that gun in the murder. This "theory," however, was patently false and the Defendants knew it.

40. In particular, the Defendants knew that the gun had never left Charlotte, North Carolina after May 1988. As a result, the Defendants also knew that Plaintiff had not stolen the gun and that the gun, therefore, was not the murder weapon.

41. Prior to Plaintiff's criminal trial, the Charlotte Police Department told the Defendants that a friend of Brigman's had found Brigman's gun under his bed in Charlotte, where it had been since it went missing in May 1988. The Charlotte Police Department was called to the home and recovered the gun. Notwithstanding its obvious exculpatory value, the Defendants buried information about the gun from both the prosecution and defense.

42. The Defendants also knew that the gun could not be the murder weapon because casings and bullets from the gun did not match those at the crime

scene. Nonetheless, instead of disclosing this highly exculpatory evidence, the Defendants falsely reported that there was a perfect match.

43. Finally, the Defendants withheld a host of police reports and notes with exculpatory and impeaching information from the prosecutor that would have been material to the Plaintiff's defense, including but not limited to documents that corroborated Plaintiff's innocence and undermined the State's main witnesses.

## Plaintiff's Wrongful Arrest and Prosecution

44. Armed with their fabricated case, the Defendants falsely arrested Plaintiff for the Dreher murder on October 29, 1988.

45. When the Defendants arrested Plaintiff, they brought him to the police station. The Defendants accused him of murder, showed him gory crime scene photographs and interrogated him without his mother present (notwithstanding the fact that he was a juvenile).

46. Plaintiff told the Defendants that he was innocent and had nothing whatsoever to do with the crime.

47. Unable to coerce Plaintiff to confess to something he did not do, the Defendants fabricated circumstantial evidence of his guilt. The Defendants falsely alleged that Plaintiff was hiding in the woods upon his arrest; that he gave conflicting accounts of his whereabouts on the night of the crime; and that he had crocodile tears when his mother later arrived at the police station to disguise his cold, calculating demeanor. None of this was true.

48.     The Defendants presented their fabricated case to the prosecution and at a probable cause hearing. At that hearing, Bollinger and Defendant Lightner testified. As a result of the Defendants' misconduct, Plaintiff was wrongfully held over for trial. He was tried as an adult.

49.     At Plaintiff's criminal trial, all of the false and fabricated evidence the Defendants created was used against Plaintiff. Among others, Raiford, Bollinger and Plaintiff's other friends who were coerced testified as did Defendants Lightner, Nester and Neuschaefer. None of the exculpatory and impeaching evidence described in the paragraphs above was disclosed to the prosecutor and therefore Plaintiff could not introduce it at trial.

50.     Because of the Defendants' misconduct, Plaintiff was wrongfully convicted of murder and sentenced to life in prison. At his sentencing, Plaintiff continued to maintain his innocence, explaining that he was never in the pet store and had nothing to do with the crime.

**Plaintiff's Exoneration**

51.     In 2012, Bollinger was at a gathering in Hillsborough, North Carolina, where he happened to meet Dwayne Dail. Dail had spent 18 years prison for a rape that he did not commit; with the help of the NCCAI, Dail was exonerated in 2007 when DNA conclusively proved his innocence.

52.     After hearing Dail tell his story, Bollinger summoned the courage to reach out to the North Carolina Center on Actual Innocence (NCCAI). He explained then, to the prosecutors litigating Plaintiff's post-conviction claims, and later in

testimony during Plaintiff's post-conviction hearing that his statement to police and his testimony at trial was false and fabricated by the Defendants. Bollinger stated that he was coerced into giving that false statement and attendant testimony by the Defendants' threats.

53.     Bollinger's recantation not only passed a polygraph given by a former FBI agent, but also was deemed credible by the post-conviction court that granted Plaintiff a new trial.

54.     The Defendants' additional coercion of witnesses and the Defendants' withholding of highly material exculpatory and impeachment evidence also came to light during Plaintiff's post-conviction proceedings.

55.     Armed with new evidence of the Defendants' misconduct, and with the help of the NCCAI, Plaintiff filed a post-conviction petition.

56.     After a week-long hearing, on August 11, 2016, a court granted Plaintiff a new trial. The court stated that it was "upset" about Defendant Lightner's handling of the witnesses in the Dreher homicide, all of whom were "kids 15 to 18" at the time. Indeed, the court discredited Defendant Lightner's testimony and found that "something is not right."

57.     On September 8, 2016, having seen its case unravel, the State dismissed the charges against Plaintiff.

## Plaintiff's Damages

58.     Although Plaintiff has been exonerated, the damages to him from his wrongful conviction are enormous.

59.     Plaintiff was incarcerated from age 15 to age 44; the most formative years of his life. Growing up in prison, Plaintiff was deprived of the opportunity to finish school; get a job; have a family and experience fatherhood. In short, he was denied the ability to live life as an autonomous human being.

60.     The decades that Plaintiff spent wrongfully incarcerated were spent inside a 10 x 10 cell, entirely at the mercy of others. He witnessed unspeakable horrors during his incarceration: locked up with the most vicious of prisoners, Plaintiff saw inmates being beaten and stabbed to death, raped, and assaulted on a regular basis.

61.     Plaintiff too experienced physical sickness and injury while incarcerated. He was not only physically assaulted, but also suffered medical illnesses and injuries that were not properly treated.

62.     Worse, during his nearly three decades of wrongful imprisonment, Plaintiff lost his mother and his grandmothers – his bedrock and his support system through this terrible ordeal.

63.     In short, Plaintiff has suffered and continues to suffer severe emotional distress, extreme depression, extreme anxiety, and physical sickness and injury.

**Count I - 42 U.S.C. § 1983**
**Violation of Due Process**
**Fourteenth Amendment**

64.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

65.     As described more fully above, Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial and fair legal process.

66.     In the manner described more fully above, these Defendants individually, jointly, and/or in concert and in conspiracy, coerced false witness statements and attendant testimony and withheld the fact of coercion, fabricated and solicited false evidence, including testimony that they knew to be false and perjured and fabricated police reports, implicating Plaintiff in the crime, made affirmative misrepresentations regarding their conduct in the investigation and the procurement of witness statements, all of which went to the heart of the State's case and which resulted in Plaintiff's conviction at trial, and obtained Plaintiff's conviction using that false evidence, and failed to correct fabricated evidence that they knew to be false when it was used against Plaintiff, all in violation of Plaintiff's clearly established constitutional rights.

67.     Defendants also deliberately withheld exculpatory evidence from state prosecutors, Plaintiff's criminal defense attorneys, and Plaintiff. In doing so, the Defendants violated their clearly established duty to report all material exculpatory and impeachment information to prosecutors.

68.     In addition, Defendants concealed and fabricated additional evidence that is not yet known to Plaintiff.

69.     The Defendant's misconduct resulted in the unjust criminal conviction of Plaintiff, thereby denying Plaintiff his constitutional right to a fair trial and a fair legal process guaranteed by the Fifth and Fourteenth Amendments.

70.     Absent this misconduct, the prosecution of Plaintiff could not have and would not have been pursued, and Plaintiff would not have been convicted.

71.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and willful indifference to Plaintiff's clearly established constitutional rights.

72.     As a result of this violation of his constitutional rights, Plaintiff suffered injuries, including but not limited to loss of liberty, physical injury and sickness, and emotional distress.

73.     Plaintiff's injuries were caused by the policies, practices, and customs of the Wilmington Police Department and/or the City of Wilmington in that employees and agents of the WPD regularly failed to disclose exculpatory evidence to criminal defendants, fabricated false evidence implicating criminal defendants in criminal conduct, elicited false and coerced witness statements and testimony, pursued wrongful convictions through profoundly flawed investigations, and otherwise violated due process in a manner similar to that alleged herein.

74.     Indeed, during testimony at the Plaintiff's post-conviction hearing, the prosecutor in Plaintiff's case admitted that WPD did not always give her all of the relevant police reports and information that they discovered during criminal investigations and that should have been disclosed.

75.     The above-described widespread practices, which were so well-settled as to constitute the de facto policy of the WPD and/or the City of Wilmington, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it. Furthermore, the widespread practices described in the preceding paragraphs were allowed to flourish because the WPD and/or the City of Wilmington declined to implement sufficient training or any legitimate mechanism for oversight or punishment of officers and agents who withheld material evidence, fabricated false evidence and witness statements, and pursued wrongful convictions.

76.     The misconduct described in this Count was undertaken pursuant to the policy and practices of the WPD and/or the City of Wilmington in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking authority for the WPD and/or the City of Wilmington, or were actually committed by persons with such final policymaking authority.

77.     The policies, practices, and customs set forth above were the moving force behind the numerous constitutional violations in this case and directly and proximately caused Plaintiff to suffer the grievous and permanent injuries and damages set forth above.

## Count II – 42 U.S.C. § 1983
## Federal Malicious Prosecution
## Fourth and Fourteenth Amendments

78.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

79.     As described more fully above, a criminal proceeding was instituted and continued against Plaintiff.  That prosecution was initiated and continued without probable cause to believe that Plaintiff had committed the crime.

80.     Defendants instituted, procured, and participated in the criminal prosecution of Plaintiff. Except for the efforts of Defendants in fabricating, coercing and withholding evidence, there would have been no basis for a criminal prosecution of Plaintiff.

81.     Defendants acted with utter disregard for the constitutional rights of Plaintiff, and in disregard of the fact that their actions—coercing false witness statements and testimony, and the fabrication and suppression of evidence—were likely to lead to the conviction and imprisonment of an innocent teenager.  In this way and others, Defendants acted with malice.

82.     On September 8, 2016, the criminal proceeding was resolved in Plaintiff's favor when the charges against him were dismissed.

83.     The misconduct described in this count deprived Plaintiff of an adequate opportunity to defend himself at his criminal trial.

84. Defendants' misconduct, including coercing witnesses into falsely inculpating an innocent boy with testimony fabricated by Defendants as well as the suppression of evidence favorable to Plaintiff, shocks the conscience.

85. As a result of the legal proceeding maliciously instituted and continued by Defendants, Plaintiff suffered damages, including loss of liberty, physical injury and sickness, and emotional pain and suffering, as is more fully alleged above.

86. Plaintiff's state-law post-deprivation remedies for the misconduct described in this Count are constitutionally inadequate because of state law provisions that limit Plaintiff's ability to recover punitive damages and that may render Defendants immune from liability in excess of any insurance or indemnity provided by their public employer.

87. Plaintiff's injuries were caused by the policies, practices, and customs of the WPD and/or the City of Wilmington in that employees and agents of the WPD and/or the City of Wilmington regularly failed to disclose exculpatory and impeachment evidence to criminal defendants, fabricated false evidence implicating criminal defendants in criminal conduct, elicited false and coerced witness statements and testimony, pursued wrongful convictions through profoundly flawed investigations, and otherwise violated due process in a manner similar to that alleged herein.

88. The above-described widespread practices, which were so well-settled as to constitute the de facto policy of the WPD and/or the City of Wilmington, were allowed to exist because municipal policymakers with authority over the same

exhibited deliberate indifference to the problem, thereby effectively ratifying it. Furthermore, the widespread practices described in the preceding paragraphs were allowed to flourish because the WPD and/or the City of Wilmington declined to implement sufficient training or any legitimate mechanism for oversight or punishment of officers and agents who withheld material evidence, fabricated false evidence and witness statements, and pursued wrongful convictions.

89.     The misconduct described in this Count was undertaken pursuant to the policy and practices of the WPD and/or the City of Wilmington in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking authority for the WPD and/or the City of Wilmington, or were actually committed by persons with such final policymaking authority.

90.     The policies, practices, and customs set forth above were the moving force behind the numerous constitutional violations in this case and directly and proximately caused Plaintiff to suffer the grievous and permanent injuries and damages as set forth above.

## Count III – 42 U.S.C. § 1983
## Fourth Amendment

91.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

92.     In the manner described more fully above, the Defendants caused Plaintiff to be detained without probable cause after the attachment of legal process.

93. The misconduct described in this Count was undertaken by the Defendants under color of law and within the scope of their employment.

94. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and/or with reckless indifference to the rights of others.

95. As a result of the misconduct described in this Count, Plaintiff suffered injuries, including but not limited to personal physical injury and emotional distress, as more fully alleged above.

## Count IV – 42 U.S.C. § 1983
## Failure to Intervene

96. Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

97. In the manner described above, by their conduct and under color of law, during the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

98. As a result of the Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered injuries, including but not limited to loss of liberty, physical harm, and emotional distress. These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

99. The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, with malice and willful indifference to Plaintiff's

clearly established constitutional rights, and was so reckless as to demonstrate a substantial lack of concern for whether an injury would result.

100.   Plaintiff's injuries were caused by the policies, practices, and customs of the WPD and/or City of Wilmington in that employees and agents of the WPD and/or the City of Wilmington regularly failed to disclose exculpatory evidence to criminal defendants, fabricated false evidence implicating criminal defendants in criminal conduct, elicited false and coerced witness statements and testimony, pursued wrongful convictions through profoundly flawed investigations, and otherwise violated due process in a manner similar to that alleged herein.

101.   The above-described widespread practices, which were so well-settled as to constitute the de facto policy of the WPD and/or the City of Wilmington, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it. Furthermore, the widespread practices described in the preceding paragraphs were allowed to flourish because the WPD and/or the City of Wilmington declined to implement sufficient training or any legitimate mechanism for oversight or punishment of officers and agents who withheld material evidence, fabricated false evidence and witness statements, and pursued wrongful convictions.

102.   The misconduct described in this Count was undertaken pursuant to the policy and practices of the WPD and/or City of Wilmington in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking authority for the WPD

and/or City of Wilmington, or were actually committed by persons with such final policymaking authority.

103. The policies, practices, and customs set forth above were the moving force behind the numerous constitutional violations in this case and directly and proximately caused Plaintiff to suffer the grievous and permanent injuries and damages set forth above.

## Count V – 42 U.S.C. § 1983
## Conspiracy

104. Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

105. Defendants agreed among themselves and with other individuals to act in concert to deprive Plaintiff of his constitutional rights, including rights under the Fourteenth Amendment, all as described in the various paragraphs of this Complaint.

106. In this manner, Defendants, acting in concert with other unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

107. In furtherance of the conspiracy, each of the co-conspirators engaged in and facilitated numerous overt acts, including but not limited to those set forth above—such as coercing witnesses into giving false statements, and fabricating and withholding evidence—and was an otherwise willful participant in joint activity.

108. The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and with malice and willful indifference to Plaintiff's clearly established constitutional rights.

109. As a result of the illicit agreements and actions in furtherance of the conspiracy referenced above, Plaintiff's rights were violated, and he sustained injuries, including loss of liberty, physical injury and sickness, and emotional pain and suffering, as is more fully alleged above.

## Count VI – State Law
## Intentional Infliction Of Emotional Distress

110. Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

111. In the manner described more fully above, Defendants inculpated Plaintiff in a crime he did not commit. Their conduct in so doing was extreme and outrageous and exceeds all bounds usually tolerated by a decent society.

112. The misconduct described in this Count was undertaken intentionally and in deliberate disregard of a high degree of probability that emotional distress would follow.

113. As a result of Defendants' misconduct, Plaintiff suffered severe and debilitating emotional distress.

## Count VII – State Law
## Malicious Prosecution

114. Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

115.     As described more fully above, a criminal proceeding was instigated and continued against Plaintiff.  That prosecution was initiated without probable cause to believe that Plaintiff had committed the crime.

116.     Defendants instituted, procured, or participated in the criminal prosecution of Plaintiff.  Except for the efforts of Defendants in coercing witnesses into making false statements, and fabricating and withholding evidence, it is unlikely there would have been a criminal prosecution of Plaintiff.

117.     Defendants acted with malice and without probable cause.

118.     The criminal prosecution was terminated in Plaintiff's favor when the charges against him were dismissed.

119.     As a result of Defendants' misconduct, Plaintiff suffered injuries, including but not limited to loss of liberty, physical harm, and emotional distress.

## Count VIII – State Law
## Obstruction of Justice

120.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

121.     As described more fully above, Defendants obstructed, impeded and hindered public and legal justice in that they coerced witnesses into giving false statements, and fabricated and withheld evidence, preventing Plaintiff from successfully and effectively mounting a defense to criminal charges.

122.     The misconduct described in this Count was undertaken intentionally, willfully, and with malice.

123.    As a result of the Defendant's obstruction of justice, Plaintiff suffered damages, including loss of liberty, physical injury and sickness, and emotional pain and suffering, as is more fully alleged above.

### Count IX – State Law
### Civil Conspiracy

124.    Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

125.    As described more fully in the preceding paragraphs, Defendants, acting in concert with other known and unknown co-conspirators in a malicious combination, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

126.    In furtherance of the conspiracy, the Defendants committed overt acts and were otherwise willful participants in joint activity including but not limited to the malicious prosecution of Plaintiff and the intentional infliction of emotional distress upon him.

127.    The misconduct described in this Count was undertaken intentionally, willfully, and with malice.

128.    As a result of the Defendants' conspiracy, Plaintiff suffered damages, including loss of liberty, physical injury and sickness, and emotional pain and suffering, as is more fully alleged above.

## Count X – State Law
## Respondeat Superior

129.    Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

130.    In committing the acts alleged in the previous paragraphs, Defendants were employees or agents of the City of Wilmington, acting within the scope of their employment.

131.    The City of Wilmington has waived its immunity by purchasing insurance pursuant to N.C. Gen. Stat. § 160A-485(a).

132.    Therefore, the City of Wilmington is liable as principal for the torts committed by his agents in the course and scope of their employment under the doctrine of respondeat superior.

## Count XI – State Law
## Indemnification

133.    Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

134.    The City of Wilmington is permitted by state law and, on information and belief, has elected to pay any final judgment against an employee that results from an act done or omission made in the scope and course of his/her employment with the City.

135.    In committing the acts alleged in the previous paragraphs, Defendants were at all times employees of the City of Wilmington acting within the scope and course of their employment.

## Count XII - Constitution of North Carolina, Art. I, §§ 19-20
## Violations of Due Process

136.　Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

137.　Pleading in the alternative to the above counts, as described more fully above, Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional rights under Art. I, §§ 19 and 20 of the Constitution of North Carolina in one or more of the following ways:

> (a) by fabricating and soliciting evidence they knew to be false, including testimony that they knew to be false and perjured and fabricated police reports;

> (b) by obtaining Plaintiff's conviction using false evidence;

> (c) by failing to correct fabricated evidence that they knew to be false when it was used against Plaintiff;

> (d) by coercing witnesses into giving false police statements and testimony at trial, and withholding the fact of that coercion;

> (e) by concealing exculpatory evidence from Plaintiff,

> (f) by instituting, procuring, and participating in the criminal prosecution of Plaintiff without probable cause.

138.　The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and willful indifference to Plaintiff's clearly established constitutional rights.

139.	As a result of these violations of his constitutional rights, Plaintiff suffered injuries, including but not limited to loss of liberty, physical sickness, and emotional distress.

140.	On information and belief, Plaintiff's state tort remedies are inadequate as a matter of law.

WHEREFORE, Plaintiff, JOHNNY SMALL, respectfully requests that this Court enter judgment in their favor and against Defendants CITY OF WILMINGTON, J.J. LIGHTNER, DONNA BROWN, WAYNE NORRIS, DARRYL NESTER, JOSEPH NEUSCHAEFER, BRUCE HICKMAN, UNKNOWN EMPLOYEES OF THE WILMINGTON POLICE DEPARTMENT, and UNKNOWN SURETY FOR THE CITY OF WILMINGTON, awarding compensatory damages, costs, and attorneys' fees against each Defendant, along with punitive damages against each of the individual Defendants, as well as any other relief this Court deems appropriate.

## JURY DEMAND

Plaintiff, JOHNNY SMALL, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

**JOHNNY SMALL**


By: /s/ Gayle Horn
Jon Loevy, ILBN 6218254
Gayle Horn, ILBN 6286427
Tara Thompson, ILBN 6279922
Cindy Tsai, ILBN 6293973
Aisha Davis, ILBN 6323791
Katie Roche, ILBN 6321395
Anthony Balkissoon, ILBN 6302344

LOEVY & LOEVY
311 N. Aberdeen, Third floor
Suite 100
Chicago, Illinois 60607
gayle@loevy.com
Phone: (312) 243-5900
Fax: (312) 243-5902


/s/ David S. Rudolf
David S. Rudolf, NCBN: 8587
RUDOLF WIDENHOUSE
225 East Worthington Avenue
Ste. 200
Charlotte, NC 28203
Telephone: (704) 333-9945
dsrudolf@rudolfwidenhouse.com
Local Civil Rule 83.1 Counsel for Plaintiff